UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


MARCELINO LaSALLE, JR.,      :
        Petitioner,      :
                            :                   PRISONER
       v.                 :     CASE NO. 3:13-cv-1703 (JBA)
                            :
PETER MURPHY,            :
        Respondent.      :


RULING RE: PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Marcelino LaSalle, Jr., currently incarcerated at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, brings this action pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (2000). He challenges his conviction for murder. For the reasons that follow, the petition is denied.

I.   Factual Background

On June 22, 2010, the petitioner was living in a boarding house in Groton, Connecticut. In the late afternoon or early evening, the petitioner approached a male tenant and apologized for making noise a few nights earlier. The petitioner told the male tenant that the manager, the victim, intended to evict him. The petitioner said that he needed to get a receipt from the

manager and that the petitioner planned to "get everyone" who was complaining about him.  State v. LaSalle, 95 Conn. App. 263, 265, 897 A.2d 101, 104 (2006).

At approximately 6:00 p.m., the petitioner approached a female tenant.  He yelled at her that he was being evicted because she had complained about a fight he was involved in outside of the boarding house.  The petitioner told the female tenant that he was searching for whoever had complained about him and threatened to kill her if she returned to the boarding house that night.  The female tenant left the boarding house immediately after hearing these threats.  See id. at 265-66, 897 A.2d at 104.

Several hours after his encounters with the other tenants, the petitioner went to the manager's room on the first floor of the boarding house.  He cut and stabbed the manager four times with a sharp knife on different parts of his body.  The petitioner cut the manager on the back of his shoulder and his cheek and stabbed him in the right side of his neck and the right side of his chest.  The chest wound cut the manager's second rib, the top part of his lung and his aorta, causing blood to collect in the manager's thoracic cavity around his lungs and heart.  The manager died shortly after this wound was inflicted.  See id. at 266, 897 A.2d at 104.

2

After he killed the manager, the petitioner left the boarding house and walked toward a nearby motel.  He encountered the owner of the motel in the parking lot.  The motel owner observed that the petitioner's clothes were covered with blood and asked him to leave the motel property.  When the petitioner did not leave, the motel owner threatened to spray the petitioner in the eyes with a bottle of commercial strength cleaning fluid he was holding.  The petitioner left the motel and walked back toward the boarding house.  The motel owner called the police.  See id. at 266-67, 897 A.2d at 105.

During the hour immediately following the manager's death, the petitioner tried to conceal his involvement in the crime. He washed the knife and hid it in a paper bag in his room.  He placed the shorts and socks he had been wearing, which were covered with the manager's blood, in a plastic bag and hid the bag in the oven which was located in a common area of the boarding house.  The petitioner also discarded his sweatshirt and a towel, also covered with the manager's blood, on properties surrounding the boarding house.  See id. at 267, 897 A.2d at 105.

At approximately 10:00 p.m., the petitioner was walking down the road away from the boarding house when he was stopped by a police officer.  By this time, other officers had found the

3

manager's body.  The officer asked the petitioner to stop so the officer could ask him questions and check him for weapons. During their brief conversation, the officer did not notice anything unusual about the petitioner's speech.  When the officer attempted to check the petitioner for weapons, the petitioner swung at a second officer who had stopped to assist. After a scuffle, the petitioner was arrested.  He was later charged with the manager's murder.  See id., 897 A.2d at 105.

II.   Procedural Background

In 2004, after a jury trial, the petitioner was convicted of murder and sentenced to fifty-three years imprisonment.  The petitioner challenged his conviction on direct appeal on three grounds:  there was insufficient evidence to support his conviction for murder; the court improperly refused his request to charge the jury that use of a deadly weapon, considered alone, does not establish intent to kill; and the trial court improperly instructed the jury on the state's burden to prove his guilt beyond a reasonable doubt.  The Connecticut Appellate Court affirmed the conviction and the Connecticut Supreme Court denied certification.  See State v. LaSalle, 95 Conn. App. 263, 265, 897 A.2d 101, 104, cert. denied, 279 Conn. 908, 901 A.2d 1277 (2006).

In 2006, the petitioner filed a petition for writ of habeas

4

corpus in state court on the ground that trial counsel was ineffective and deprived him of his right to testify in his own behalf.  The state court denied the petition and the appeal was dismissed.  See LaSalle v. Commissioner of Correction, No. CV064001260, 2011 WL 1888411 (Conn. Super. Ct. Apr. 29, 2011), appeal dismissed, 139 Conn. App. 910, 56 A.3d 763 (2012), cert. denied, 308 Conn. 916, 62 A.3d 527 (2013).  The petitioner commenced this action by petition received November 11, 2013.

III. Standard of Review

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws.  28 U.S.C. § 2254(a); Swarthout v. Cooke, ___ U.S. ___, 131 S. Ct. 859, 861 (2011) (federal habeas relief is not available for violations of state law).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the

> facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d). The federal law defined by the Supreme
Court "may be either a generalized standard enunciated in the
Court's case law or a bright-line rule designed to effectuate
such a standard in a particular context." Kennaugh v. Miller,
289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909 (2002).
Clearly established federal law is found in holdings, not dicta,
of the Supreme Court at the time of the state court decision.
Carey v. Musladin, 549 U.S. 70, 74 (2006). Second Circuit law
which does not have a counterpart in Supreme Court jurisprudence
cannot provide a basis for federal habeas relief. See Renico v.
Lett, 559 U.S. 766, 778 (2010) (holding that court of appeals
erred in relying on its own decision in a federal habeas
action). Thus, where holdings of the Supreme Court regarding
the issue presented on habeas review are lacking, the state
court cannot be said to have unreasonably applied clearly
established federal law. See Carey v. Musladin, 549 U.S. 70, 77
(2006).

A decision is "contrary to" clearly established federal law
where the state court applies a rule different from that set
forth by the Supreme Court or if it decides a case differently
than the Supreme Court on essentially the same facts. Bell v.

6

Cone, 535 U.S. 685, 694 (2002).  A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case.

The state court decision must be more than incorrect; it must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."  Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 786-87 (2011).  See also Burt v. Titlow, ___ U.S. ___, 134 S. Ct. 10, 15 (2013) (federal habeas relief warranted only where the state criminal justice system has experienced an "extreme malfunction"); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (objective unreasonableness is "a substantially higher threshold" than incorrectness).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct.  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) (standard for evaluating state-court rulings where constitutional claims have been considered on the merits and which affords state-court rulings the benefit of the doubt is highly deferential and difficult for petitioner to meet).  The

7

presumption of correctness, which applies to "historical facts, that is, recitals of external events and the credibility of the witnesses narrating them," will be overturned only if the material facts were not adequately developed by the state court or if the factual determination is not adequately supported by the record. Smith v. Mann, 173 F.3d 73, 76 (2d Cir. 1999) (internal quotation marks and citation omitted).

In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Pinholster, 131 S. Ct. at 1398-99. Because collateral review of a conviction applies a different standard than direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition. Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).

IV. Discussion

The petitioner challenges his conviction on four grounds: (1) there was insufficient evidence to support his conviction (Doc. #1 at 64); (2) the trial court refused to provide a requested charge that use of a weapon does not, in and of itself, constitute proof of intent to commit murder (Doc. #1-8 at 86);  (3) the trial court provided a deficient jury charge on reasonable doubt (Doc. #1-8 at 96); and (4) trial counsel was

8

ineffective (Doc. #1-8 at 104).  These are the same grounds he raised on direct appeal and in his state habeas action.

A.  Sufficiency of the Evidence

The petitioner first argues that his due process rights were violated because there was insufficient evidence to support his conviction.

The Due Process Clause protects a criminal defendant against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.  Fiori v. White, 531 U.S. 225, 228-29 (2001).  Federal courts, however, do not relitigate state trials and make independent determinations of guilt or innocence.  See Herrera v. Collins, 506 U.S. 390, 401-02 (1993).

When a federal habeas petitioner challenges the sufficiency of the evidence used to convict him, the court must "'view[] the evidence in the light most favorable to the prosecution'" and determine whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Coleman v. Johnson, ___ U.S. ___, 132 S. Ct. 2060, 2064 (2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  The court must defer to the trier of fact and presume that the trier of fact resolved any conflicts in favor of the prosecution. Thus, constitutional sufficiency of the evidence review is

9

sharply limited.  See Wright v. West, 505 U.S. 277, 296 (1992).
Credibility determinations, for example, generally are beyond
the scope of review.  See Schlup v. Delo, 513 U.S. 298, 330
(1995).

When considering a sufficiency of the evidence claim, the
federal court looks to state law to determine the elements of
the crime.  Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.
2002).  The federal court is bound by a state court's
interpretation of state law.  Bradshaw v. Richey, 546 U.S. 74,
76 (2005).

Although the Connecticut Appellate Court did not cite any
federal law when articulating the standard of review for
insufficiency of the evidence claims, the state court's analysis
conforms to the federal standard.  Thus, the decision of the
Connecticut Appellate Court is not contrary to clearly
established federal law.  See Early v. Packer, 537 U.S. 3, 8
(2002) (holding that state court need not be aware of nor cite
relevant Supreme Court cases, so long as the reasoning and
decision do not contradict the applicable law).  The court
considers below whether the Connecticut Appellate Court's
analysis of the sufficiency of the evidence claim reasonably
applied clearly established federal law.

The petitioner argued in state court that there was

insufficient evidence of his intent to kill the manager because
there was uncontroverted evidence that he was intoxicated.  The
Connecticut Appellate Court disagreed.

The Connecticut Appellate Court noted that intent often is
inferred from conduct, the cumulative effect of circumstantial
evidence and inferences that may be drawn therefrom.  For
example, intent to cause death may be inferred from the type of
weapon used, the manner in which the weapon was used, the type
of wounds inflicted and the events immediately preceding and
following the death.  Also, intent to cause death can be
inferred from evidence that the killer had a motive.  LaSalle,
95 Conn. App. at 270, 897 A.2d at 107.

The prosecution had presented evidence that the manager had
recently told the petitioner that he was being evicted from the
boarding house, the petitioner was angry and had made
threatening remarks to two other tenants in the hours before the
death, the petitioner was seen in clothing covered in blood
shortly after the death, and many items belonging to the
petitioner and covered with the manager's blood were found in
the petitioner's room, common areas of the boarding house and on
surrounding properties.  The Connecticut Appellate Court
considered this sufficient evidence of the petitioner's state of
mind at the time of the incident.  In addition, the manager was

stabbed multiple times with a sharp knife, once with enough force to cut his rib, lung and aorta.  The Connecticut Appellate Court noted that a person who uses a deadly weapon on a vital part of another person is deemed to intend the probable result of his action.  Thus, the court considered it reasonable for the jury to infer intent to kill the manager.  Id. at 270-72, 897 A.2d at 107-08.

Further, although the petitioner characterized evidence of his intoxication as uncontroverted, several police officers testified that the petitioner spoke normally and did not display any signs of intoxication following the incident.  The testimony offered to support the claim of intoxication was expert testimony based on assumptions regarding the type of alcohol the petitioner had consumed and how much he consumed after the death.  There was no evidence presented regarding the type of alcohol consumed or how much alcohol the petitioner had consumed prior to the death.  Id. at 273, 897 A.2d at 108.

The Connecticut Appellate Court noted that the jury had the responsibility to determine whether the petitioner was intoxicated and, if so, whether he still was able to form the intent to kill the manager.  The jury heard evidence that the petitioner had tried to conceal the murder by washing the knife and hiding his bloodstained clothing.  This conduct, occurring

after the murder, could show consciousness of guilt and intent to conceal the evidence of the crime.  Construing the evidence presented in the light most favorable to sustaining the verdict, the Connecticut Appellate Court concluded that the jury reasonably could have found that the petitioner was able to form the intent to kill the manager.  Id. at 272-73, 897 A.2d at 108.

The federal court cannot reweigh the evidence or second-guess the jury.  See Cavazos v. Smith, ___ U.S. ___, 132 S. Ct. 1, 7 n.* (2011).  In light of the evidence presented, the Connecticut Appellate Court reasonably concluded that there was sufficient evidence for the jury to find that the petitioner had the intent to kill the manager.  As the Connecticut Appellate Court's analysis of this claim was a reasonable application of Supreme Court law, habeas relief is not warranted.  Accordingly, the petition is denied on this ground.

B.   Jury Charge: Intent

In his second ground for relief, the petitioner challenges the trial court's refusal to instruct the jury that the use of a deadly weapon, standing alone, does not constitute intent to commit murder.  He argued in state court that the failure to give this instruction shifted the state's burden of proof on the element of intent and denied him due process.

"[N]ot every ambiguity, inconsistency, or deficiency in a

jury instruction rises to the level of a due process violation. The question is 'whether the ailing instruction … so infected the entire trial that the resulting conviction violates due process.'"  Middleton v. McNeil, 541 U.S. 433, 437 (2004) (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973))).  The petitioner must show "both that the instruction was ambiguous and that there was '"reasonable likelihood"' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." Waddington v. Sarausad, 555 U.S. 179, 190-91 (2009) (citations omitted).  "'"[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."'"  Middleton, 541 U.S. at 437 (quoting Boyde v. California, 494 U.S. 370, 378 (1990) (quoting Cupp, 414 U.S. at 146-47)).

Although the Connecticut Appellate Court cited only state cases, the law it applied is consistent with the federal standard.  The Connecticut Appellate Court reviewed the jury instructions in their entirety and considered whether the petitioner was denied a fair trial.  Thus, the court's analysis is not contrary to Supreme Court law.  The court next considers whether the analysis is a reasonable application of Supreme

Court law.

The trial court instructed the jury regarding intent as follows:

> The first element is that the defendant had the intent to cause the death of another person, here, [the manager].  The state must prove beyond a reasonable doubt that the defendant in causing the death of [the manager] did so with the specific intent to cause death.
>
> There is no particular length of time necessary for the defendant to have formed the specific intent to kill.  Intent relates to the condition of mind of the person who commits the act, his purpose in doing it. As defined by our statute, a person acts intentionally with respect to a result when his conscious objective is to cause such result.  Intentional conduct is purposeful conduct rather than conduct that is accidental or inadvertent.
>
> What a person's intent has been is usually a matter to be determined by inference.  No person is able to testify that he looked into another's mind and saw therein a certain intention to do harm to another. The only way in which a jury can ordinarily determine what a person's intention was at any given time, aside from that person's own statements, is by determining what that person's conduct was and what the circumstances were surrounding that conduct and, from those, infer what his intention was.
>
> The type and number of wounds inflicted, as well as the instrument used, *may* be considered as evidence of the perpetrator's intent and, from such evidence, an inference *may* be drawn in some cases that there was

intent to cause a death.  Any inference that
*may* be drawn from the nature of the
instrumentality used and the manner of its
use is an inference of fact to be drawn by
the jury upon consideration of these and all
other circumstances in the case in
accordance with my previous instructions on
circumstantial evidence.

Declarations and conduct of the accused
before and after the infliction of wounds
*may* be considered if you find that they tend
to show the defendant's intent.  Therefore,
you *may* draw all reasonable and logical
inferences from the conduct you *may* find the
defendant engaged in in light of all the
surrounding circumstances and, from [those],
determine whether the state has proven the
essential element of intent beyond a
reasonable doubt.

The inference is not a necessary one; that
is, you are not required to infer intent
from the accused's alleged conduct, but it
is an inference you *may* draw if you find it
is reasonable and logical and in accordance
with my instructions on circumstantial
evidence.  I again remind you that the
burden of proving intent beyond a reasonable
doubt is on the state.

LaSalle, 95 Conn. App. at 274-75, 897 A.2d at 109 (emphasis

added by appellate court).

The Connecticut Appellate Court emphasized the facts that

instruction was couched in permissive, not mandatory, language;

clearly stated that the jury was not required to draw an

inference based on the petitioner's conduct; and contained two

references to the requirement that the state bore the burden of

demonstrating intent beyond a reasonable doubt.  The court
concluded that these facts ensured that the jury was not misled
by the omission of the requested language.  Id. at 276-77, 897
A.2d at 110.

The Supreme Court has upheld permissive inferences where
the jury is allowed, but not required, to draw an inference.
The inference will be upheld as constitutional as long as the
inference is not irrational.  Because the state must prove the
underlying facts and convince the jury that these facts warrant
the suggested inference, a permissive inference does not shift
the burden of proof from the state.  See Francis v. Franklin,
471 U.S. 307, 314-15 (1985); Ulster County Court v. Allen, 442
U.S. 140, 157-63 (1979).

The Connecticut Appellate Court's analysis of this issue
and its determination that the jury instructions described only
a permissive inference are a reasonable application of Supreme
Court law.  Accordingly, federal habeas corpus relief is not
warranted on this claim.

C.   Jury Charge: Reasonable Doubt

The petitioner also challenges the jury instruction on
reasonable doubt.  He argues that the definition of reasonable
doubt as "something more than a guess or surmise" and "a real
doubt, an honest doubt" was incorrect and diluted the state's

17

burden of proof.

Although due process requires application of the beyond-a-reasonable-doubt standard, "the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." Victor v. Nebraska, 511 U.S. 1, 5 (1994). No particular words are required. The instruction considered in its entirety, however, must "correctly conve[y] the concept of reasonable doubt to the jury.'" Id. (quoting Holland v. United States, 348 U.S. 121, 140 (1954)). The court must consider "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Estelle v. McGuire, 502 U.S. 62, 72 (1991).

The Connecticut Appellate Court cited and applied Supreme Court precedent in analyzing the specified language in the context of the charge as a whole. Thus, its decision is not contrary to Supreme Court law. The court next considers whether the analysis is a reasonable application of Supreme Court law.

The trial court defined reasonable doubt as follows:

> The phrase "reasonable doubt" has no technical or unusual meaning. You can arrive at its real meaning by emphasizing the word "reasonable." A reasonable doubt is a doubt which is something more than a guess or a surmise. It is not conjecture or a fanciful doubt. A reasonable doubt is not a doubt which

is raised by someone simply for the sake of
raising doubt.

A reasonable doubt, in other words, is a
real doubt, an honest doubt, a doubt which has
its foundation in the evidence or lack of
evidence.

Proof beyond a reasonable doubt does not
mean proof beyond all doubt.  The law does not
require absolute certainty on the part of the
jury before it returns a verdict of guilty.

The law requires that after hearing all of
the evidence, if there is something in the
evidence or lack of evidence that leaves in the
minds of the jurors as reasonable men and women,
a reasonable doubt as to the guilt of the
accused, then the accused must be given the
benefit of that doubt and found not guilty.

Proof beyond a reasonable doubt is proof
that precluded every reasonable hypothesis except
guilt and is inconsistent with any other rational
conclusions.

Doc. #9, Resp't's Mem. App. N, Transcript of Apr. 19, 2004, at

732-33.

The Connecticut Appellate Court noted the federal

constitution does not require any specific language to define

reasonable doubt and that the language challenged here had been

upheld by the state appellate courts.  Based on prior state

appellate decisions and a review of the entire charge given in

this case, the court concluded that the jury "instruction

accurately conveyed the concept of reasonable doubt to the

jury."  LaSalle, 95 Conn. App. at 278-79, 897 A.2d at 111.

The Supreme Court rejected a jury charge that equated reasonable doubt with "grave uncertainty" and an "actual substantial doubt" and further explained that the jury must conclude to a "moral certainty" that the defendant was guilty. Cage v. Louisiana, 489 U.S. 39, 41 (1990) (internal quotation marks omitted).  The Court concluded that the words "substantial" and "grave" suggested a higher degree of doubt that the standard required.  In addition, "the reference to 'moral certainty[]' rather that evidentiary certainty" would allow the jury to reach a verdict of guilty on a lesser degree of proof that is required under the Due Process Clause.  Id.

In Victor, the Supreme Court considered a definition of reasonable doubt as a "substantial doubt."  511 U.S. at 19-20. Although the Court acknowledged that, taken alone, the phrase is confusing and could lead "to an overstatement of the doubt necessary to acquit," it considered the phrase in context and concluded that the remainder of the instruction made clear that the term "substantial" was used to refer to the "existence rather than magnitude of the doubt."  Id. at 20.  Thus, the Court held that the instruction was not unconstitutional.  The Court also considered an instruction that "a reasonable doubt is 'not a mere possible doubt."  Id. at 17.  The Court rejected this challenge because the remainder of the instruction

20

demonstrated that the language was intended to distinguish a
reasonable doubt from a fanciful or imaginary doubt.  See id.

   The challenged language in this case is similar to the
language upheld in Victor.  The trial court referenced a real
doubt or an honest doubt in contrast to a guess or surmise and
emphasized that the doubt must derive from the evidence or lack
thereof.  In addition, the trial court repeatedly emphasized the
state's burden of proof.  The Connecticut Appellate Court's
analysis of this claim comports with, and therefore is a
reasonable application of, Supreme Court law.  The petition for
writ of habeas corpus is denied on this ground.

   D.   Ineffective Assistance of Counsel

   In his final ground for relief, the petitioner argues that
trial counsel was ineffective when, after the plaintiff told
counsel he would testify falsely, she threatened to leave him on
the stand with no help.  The petitioner states that counsel told
him he could not lie under oath and he agreed to tell the truth.

   Strickland v. Washington, 446 U.S. 668 (1984), "is the
relevant 'clearly established Federal law, as determined by the
Supreme Court of the United States'" on claims of ineffective
assistance of counsel.  Aparicio v. Artuz, 269 F.3d 78, 95 & n.8
(2d Cir. 2001) (quoting 28 U.S.C. § 2254(d)(1)).  An ineffective
assistance claim under Strickland has two components.  First,

the petitioner must show that counsel's performance was deficient "under prevailing professional norms"; second, that the deficiency must have prejudiced the defense.  Hinton v. Alabama, ___ U.S. ___, 134 S. Ct. 1081, 1088 (2014) (quoting Padilla v. Kentucky, 559 U.S. 356, 366 (2010) (citing Strickland, 446 U.S. at 687)).  The petitioner "must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance...."  Bell v. Cone, 535 U.S. 685, 698–99 (2002).  He must show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner.  Id. (citation omitted).

Counsel is presumed to be competent.  Thus, the petitioner bears the burden of demonstrating unconstitutional representation.  See United States v. Cronic, 466 U.S. 648, 658 (1984).  The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions.  See Rompilla v. Beard, 545 U.S. 374, 381 (2005).  To satisfy the prejudice prong of the Strickland test, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"; the probability must "undermine confidence in the outcome" of the trial.  Strickland, 466 U.S. at 694.  To prevail, the

22

petitioner must demonstrate both deficient performance and sufficient prejudice.  See Strickland, 466 U.S. at 700.  Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong.

The state court applied the standard established in Strickland.  Because the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of section 2254(d)(1).  The court will consider the last reasoned state court decision to determine whether the decision is an unreasonable application of federal law.  See Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991).  Here, the court reviews the decision of the Connecticut Superior Court on the petition for writ of habeas corpus.  See Doc. #9, Resp't's Mem. App. G at 10-21; LaSalle v. Commissioner of Correction, No. CV06-4001260-S, 2011 WL 1888411 (Conn. Super. Ct. Apr. 29, 2011).

In considering a federal habeas petition, the court does not conduct a de novo review of the claims.  The function of the federal court when reviewing a claim for ineffective assistance of counsel under section 2254(d) is to determine "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Premo v. Moore, ___ U.S. ___, 131 S. Ct. 733, 740 (2011).

The petitioner states that he told defense counsel that he

23

intended to testify falsely.  He agreed to tell the truth when counsel informed him that she would withdraw her representation if he committed perjury.  The petitioner argues that his fear that counsel would withdraw caused him to decline to testify at trial and deprived him of his right to testify.

The habeas court noted that the petitioner had no constitutional right to testify falsely, that defense counsel had an ethical obligation to persuade the petitioner to tell the truth.  The state court concluded that defense counsel conducted herself properly in persuading the petitioner to testify truthfully and did not prevent the petitioner from testifying at trial.  Counsel only told the petitioner that she would withdraw if he testified falsely.  Although she told him that, in her opinion, he should not testify, she did not prevent him from doing so.  The court also concluded, after affording the petitioner the opportunity at the habeas hearing to explain what his testimony would have been, that the petitioner failed to demonstrate prejudice from his decision not to testify at trial. Id. at 19-21, 2011 WL 1888411, at *5-6.

The state court considered both the performance and prejudice prongs of the Strickland test and concluded that defense counsel was not ineffective.  The state court analysis of the performance prong comports with Supreme Court law.  "Even

24

if a defendant's false testimony might have persuaded the jury to acquit him, it is not fundamentally unfair to conclude that he was not prejudiced by counsel's interference with his intended perjury." Williams v. Taylor, 529 U.S. 362, 392 (2000) (citing Nix v. Whiteside, 475 U.S. 157, 175-76 (1986)).

After careful consideration, this court concludes that the state court's analysis of this claim was a reasonable application of Supreme Court law.  Accordingly, the petition for writ of habeas corpus is denied on this ground.

V.   Conclusion

The petition for writ of habeas corpus [**Doc. #1**] is **DENIED**. Because the petitioner has not shown that he was denied a constitutional right, a certificate of appealability will not issue.  The Clerk is directed to enter judgment close this case.

**It is so ordered.**

/s/ _____
Janet Bond Arterton
United States District Judge

**Entered this 8th day of July 2014, at New Haven, Connecticut.**

25